**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GARY THOMAS STEVENS, | ) | **CHAPTER 13** |
| MICHELLE HUETTER STEVENS, | ) | |
| | ) | **CASE NO. 14-69570-lrc** |
| DEBTORS. | ) | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - | ) | **JUDGE: LISA RITCHEY CRAIG** |
| OCWEN LOAN SERVICING, LLC, AS | ) | |
| SERVICER FOR U.S. BANK NATIONAL | ) | |
| ASSOCIATION, AS TRUSTEE FOR TBW | ) | |
| MORTGAGE-BACKED TRUST SERIES | ) | - - - - - - - - - - - - - - - - - - - - - - - - - - - |
| 2006-5, TBW MORTGAGE PASS- | ) | **CONTESTED MATTER** |
| THROUGH CERTIFICATES, SERIES | ) | |
| 2006-5, | ) | |
| | ) | |
|      MOVANT. | ) | |
| V. | ) | |
| | ) | |
| GARY THOMAS STEVENS, | ) | |
| MICHELLE HUETTER STEVENS, | ) | |
| ADAM M. GOODMAN, TRUSTEE, | ) | |
| | ) | |
|      RESPONDENTS. | ) | |

**NOTICE OF HEARING**

NOTICE IS HEREBY GIVEN that a Motion for Relief from the Automatic Stay has been

filed in the above-styled case. If a hearing cannot be held within thirty (30) days from the filing

of the Motion for Relief of Stay as required by 11 U.S.C. § 362, Movant, by and through counsel,

waives this requirement and agrees to the next earliest possible hearing date, as evidenced by the

signature below. The undersigned consents to the automatic stay (and any related co-debtor stay)

remaining in effect with respect to Movant until the Court orders otherwise.

HEARING will be held on the 28th day of July, 2015, at 1:15 pm, in Courtroom 1204,

U.S. Courthouse, Suite 1340, 75 Ted Turner Drive, SW, Atlanta, GA 30303.

Within three (3) days of the date of this Notice, Movant's attorney, or a pro se Movant,

shall serve the Motion and this Notice upon the Debtor(s) and the Trustee, and their attorneys of record, and shall file a Certificate of Service within three (3) days of service. Your rights may be affected by the Court's ruling on these pleadings.  You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)  If you do not want the Court to grant the relief sought in these pleadings or if you want the Court to consider your views, then you and/or your attorney must attend the hearing.  You may also file a written response to the pleadings with the Clerk at the address stated below, but you are not required to do so.  If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response.  Mail or deliver your response so that it is received by the Clerk at least two (2) business days before the hearing. The address of the Clerk's office is: Clerk, United States Bankruptcy Court, Suite 1340, 75 Ted Turner Drive, SW, Atlanta, GA 30303.  You must also mail a copy of your response to the undersigned at the address stated below.

DATED: June 28, 2016

WEISSMAN, NOWACK, CURRY & WILCO, P.C.


*/S/ C. Brent Wardrop_____*
C. Brent Wardrop
Georgia Bar No. 553733
Weissman, Nowack, Curry, & Wilco P.C.
One Alliance Center, 4th Floor
3500 Lenox Road
Atlanta, Georgia 30326
Tel.: 404-926-4500 / Fax: 404-926-4600
brentw@wncwlaw.com
ATTORNEYS FOR MOVANT

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **GARY THOMAS STEVENS,** | ) | **CHAPTER 13** |
| **MICHELLE HUETTER STEVENS,** | ) | |
| | ) | **CASE NO. 14-69570-lrc** |
| DEBTORS. | ) | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - | ) | **JUDGE: LISA RITCHEY CRAIG** |
| **OCWEN LOAN SERVICING, LLC, AS** | ) | |
| **SERVICER FOR U.S. BANK NATIONAL** | ) | |
| **ASSOCIATION, AS TRUSTEE FOR TBW** | ) | |
| **MORTGAGE-BACKED TRUST SERIES** | ) | - - - - - - - - - - - - - - - - - - - - - - - - - - |
| **2006-5, TBW MORTGAGE PASS-** | ) | **CONTESTED MATTER** |
| **THROUGH CERTIFICATES, SERIES** | ) | |
| **2006-5,** | ) | |
| | ) | |
| MOVANT. | ) | |
| V. | ) | |
| | ) | |
| **GARY THOMAS STEVENS,** | ) | |
| **MICHELLE HUETTER STEVENS,** | ) | |
| **ADAM M. GOODMAN, TRUSTEE,** | ) | |
| | ) | |
| RESPONDENTS. | ) | |

### MOTION FOR RELIEF FROM AUTOMATIC STAY AND
### WAIVER OF 30-DAY REQUIREMENT UNDER § 362(E)

OCWEN LOAN SERVICING, LLC, AS SERVICER FOR U.S. BANK NATIONAL

ASSOCIATION, AS TRUSTEE FOR TBW MORTGAGE-BACKED TRUST SERIES 2006-5,

TBW MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-5, by and through its

undersigned counsel, and pursuant to Rules 4001 and 9014 of the Bankruptcy Rules and § 362(d)

of the Bankruptcy Code, requests relief from the automatic stay provided by § 362(a) of the

Bankruptcy Code and waiver of the 30-day requirement under § 362(e). In support thereof,

Movant alleges as follows:

1.

On or about August 31, 2006, TAYLOR, BEAN & WHITAKER MORTGAGE CORP. ("Original Lender") made a secured loan to Debtors, GARY T STEVENS and MICHELLE STEVENS, in the principal amount of $235,200.00 ("Loan").  The Loan is evidenced and secured by a promissory note ("Note") and a security deed ("Security Deed") encumbering that certain real property known as 1476 FALLSBROOK COURT, ACWORTH, GA 30101 ("Property"), said Security Deed being recorded on September 11, 2006 at Deed Book 14385 / Page 843, of the Cobb County, Georgia land records, all of which Debtors executed in favor of the Original Lender on August 31, 2006.  True and correct copies of the Security Deed and Note are attached hereto as Exhibits "A" and "B," respectively.

2.

Through the Security Deed, the Original Lender acquired a secured interest in the Property, together with all improvements, easements, rights, appurtenances and fixtures on the Property.

3.

On or about December 7, 2012, Mortgage Electronic Registration Systems, Inc., ("MERS"), as nominee for Original Lender assigned all of its right, title, and interest in the Security Deed to Movant.  A true and accurate copy of the Assignment is attached hereto as Exhibit "C".

4.

Ocwen Loan Servicing, LLC, services the underlying mortgage loan and note for the property referenced in this Motion for Relief for U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR TBW MORTGAGE-BACKED TRUST SERIES 2006-5, TBW MORTGAGE

PASS-THROUGH CERTIFICATES, SERIES 2006-5 (hereinafter, "Movant" or "Noteholder")

and is entitled to proceed accordingly.  Should the Automatic Stay be lifted and/or set aside by

Order of this Court or if this case is dismissed or if the debtors obtain a discharge and a

foreclosure action is commenced or recommended, said foreclosure action will be conducted in

the name of the Noteholder.

5.

The Noteholder has the right to foreclose because Noteholder is the original mortgagee or

beneficiary or assignee of the security instrument for the referenced loan.  Noteholder directly or

through an agent has possession of the promissory note and the promissory note is either made

payable to Noteholder or has been duly endorsed.

6.

Movant's secured interest in the Property is perfected and continuing.

7.

Debtors filed a voluntary Chapter 13 bankruptcy petition in this Court on October 6,

2014.

8.

Trustee is named as a respondent solely in his official capacity.

9.

Debtors were, at the time of said Chapter 13 petition, and are now the owner of the

Property.

10.

Pursuant to the terms of the Loan documents and the Note and Security Deed, the

Debtors have been required to make direct payments to Movant at the standard post petition rate

5

of $1,372.78 each month.

11.

Debtors have defaulted in making payments which have come due since this case was filed.  As of June 08, 2016, Debtors have a post-petition deficiency of $20,244.92. This figure is comprised of fourteen (14) post petition mortgage payments in the amount of $1,372.78 each; less a suspense balance of $0.00; plus attorney's fees and costs in the amount of $1,026.00.

12.

As of June 08, 2016, the principal amount due Movant under the Loan documents and the Note and Security Deed is $236,657.31, plus interest, late charges, attorney's fees and costs.

13.

The automatic stay provided by Section 362(a) of the Bankruptcy Code prevents Movant from enforcing its lawful foreclosure rights against the Property pursuant to its Security Deed.

14.

Section 362(d) of the Bankruptcy Code requires a Court to grant relief from the automatic stay by terminating, modifying or annulling the stay, for cause, including the lack of adequate protection of a lien holder's interest in its collateral.

15.

Movant does not have adequate protection of its interest in the Property because the Debtors have failed to comply with the terms of the Loan documents and the Note and Security Deed.  Consequently, cause exists to grant Movant relief from the automatic stay so that Movant may exercise its remedies under the Security Deed and applicable state law with regard to the enforcement of its debt against the Property.

16.

Debtors also have no equity in the Property and have asserted no equity in the Property, so that Movant does not have, and cannot be given, adequate protection of its interest in the Property.

17.

If Movant is not permitted to exercise it legal rights against the Property pursuant to its Security Deed, Movant will suffer irreparable injury, loss and damage.

18.

Movant requests a waiver of the 30-day requirement under § 362(e).

WHEREFORE, Movant respectfully prays and requests of this Court as follows:

(a)    that the Automatic Stay pursuant to 11 U.S.C. § 362 be modified so as to permit the Movant to exercise its right to foreclose its secured property under the terms of the Note and Security Deed and to send notices as required by state law; or, in the alternative, Movant at its option be permitted to contact the Debtors via telephone or written correspondence to offer, provide or enter into any potential forbearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement including a deed in lieu of foreclosure as allowed by state law; and

(b)    that the terms of Bankruptcy Rule 4001(a)(3) be waived so that Movant may immediately enforce and implement the Order granting relief from the Automatic Stay; and

(c)    that the costs and fees associated with filing and prosecution of this Motion by Movant, including, but not limited to Movant's attorney fees and the associated filing fee, be borne by Debtors; and

(d)    that Movant, through its agents, servicers and representatives is/are permitted to

7

contact Debtor(s) and/or Debtor's counsel for the purpose of engaging in discussions and consideration for possible loss mitigation options, solutions and/or resolutions with regard to the underlying mortgage and note, including, but not limited to loan modification or other loss mitigation alternatives; and

(e)    that Movant be granted any such other and further relief as this Court may deem just and proper.

Dated: June 28, 2016

Respectfully submitted

WEISSMAN, NOWACK, CURRY & WILCO, P.C.

*/S/ C. Brent Wardrop*
C. Brent Wardrop
Georgia Bar No. 553733
Weissman, Nowack, Curry, & Wilco P.C.
One Alliance Center, 4th Floor
3500 Lenox Road
Atlanta , Georgia 30326
Tel.: 404-926-4500 / Fax: 404-926-4600
brentw@wncwlaw.com
ATTORNEYS FOR MOVANT

## <u>CERTIFICATE OF SERVICE</u>

I, C. Brent Wardrop, certify that I am over the age of 18 and that on this date, I served a

copy of the foregoing **Notice of Hearing and Motion for Relief from Automatic Stay** by First

Class United Stated Mail, with adequate postage prepaid, on the following persons or entities at

the addresses stated:

GARY THOMAS STEVENS
1476 FALLSBROOK COURT
ACWORTH, GA 30101

MICHELLE HUETTER STEVENS
1476 FALLSBROOK COURT
ACWORTH, GA 30101

MATTHEW E. PURCELL, ESQ.
PURCELL LAW FIRM
SUITE 300
125 TOWNPARK DRIVE
KENNESAW, GA 30144

ADAM M. GOODMAN
ADAM M. GOODMAN, 13 TRUSTEE
SUITE 200
260 PEACHTREE STREET
ATLANTA, GA 30303

Dated: June 28, 2016

***/S/ C. Brent Wardrop***
C. Brent Wardrop
Georgia Bar No. 553733
Weissman, Nowack, Curry, & Wilco P.C.
One Alliance Center, 4th Floor
3500 Lenox Road
Atlanta , Georgia 30326
Tel.: 404-926-4500 / Fax: 404-926-4600
brentw@wncwlaw.com
ATTORNEYS FOR MOVANT

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **GARY THOMAS STEVENS,** | ) | **CHAPTER 13** |
| **MICHELLE HUETTER STEVENS,** | ) | |
| | ) | **CASE NO. 14-69570-lrc** |
| **DEBTORS.** | ) | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - | ) | **JUDGE: LISA RITCHEY CRAIG** |
| | ) | |
| **OCWEN LOAN SERVICING, LLC, AS** | ) | |
| **SERVICER FOR U.S. BANK NATIONAL** | ) | - - - - - - - - - - - - - - - - - - - - - - - - - - |
| **ASSOCIATION, AS TRUSTEE FOR TBW** | ) | **CONTESTED MATTER** |
| **MORTGAGE-BACKED TRUST SERIES** | ) | |
| **2006-5, TBW MORTGAGE PASS-** | ) | |
| **THROUGH CERTIFICATES, SERIES** | ) | |
| **2006-5,** | ) | |
| | ) | |
| **MOVANT,** | ) | |
| **V.** | ) | |
| | ) | |
| **GARY THOMAS STEVENS,** | ) | |
| **MICHELLE HUETTER STEVENS,** | ) | |
| **ADAM M. GOODMAN, TRUSTEE,** | ) | |
| | ) | |
| **RESPONDENTS.** | ) | |

## AFFIDAVIT IN SUPPORT OF
## MOTION FOR RELIEF FROM AUTOMATIC STAY

STATE OF  FLORIDA  )
COUNTY OF  PALM BEACH )

I, _____ Javier Rivera _____, declare under penalty of perjury as follows:

1.      I am employed as a _____ Contract Management Coordinator _____ of Ocwen Loan Servicing,

LLC ("Ocwen"), and am authorized to sign this affidavit on behalf of OCWEN LOAN

SERVICING, LLC, AS SERVICER FOR U.S. BANK NATIONAL ASSOCIATION, AS

TRUSTEE FOR TBW MORTGAGE-BACKED TRUST SERIES 2006-5, TBW MORTGAGE

1

PASS-THROUGH CERTIFICATES, SERIES 2006-5 ("Movant"). This affidavit is provided in support of the Motion for Relief from Stay (the "Motion") filed contemporaneously herewith.

2.     I make this affidavit based upon my review of the records with regard to this underlying loan transaction, which are kept in the ordinary course of business of Ocwen. As part of my job responsibilities for Ocwen, I have personal knowledge of and am familiar with the types of records maintained by Ocwen in connection with the loan that is the subject of the Motion (the "Loan") and the procedures for creating those types of records. I have access to and have reviewed the books, records and files of Ocwen that pertain to the Loan and extensions of credit given to Debtor(s) concerning the property securing such Loan.

3.     The information in this affidavit is taken from Ocwen's business records regarding the Loan. The records are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of Ocwen's regularly conducted business activities; and (c) it is the regular practice of Ocwen to make such records.

4.     Debtor(s), GARY THOMAS STEVENS aka GARY T STEVENS has executed and delivered or is otherwise obligated with respect to that certain promissory note referenced in the Motion (the "Note"). The Debtor(s), GARY THOMAS STEVENS aka GARY T STEVENS and MICHELLE HUETTER STEVENS aka MICHELLE STEVENS, have executed and delivered or are otherwise obligated with respect to that certain Security Deed referenced in the Motion (the "Security Deed"). Pursuant to the Security Deed referenced in the Motion, all obligations of the Debtor(s) under and with respect to the Note and the Security Deed are secured by the property referenced in the Motion.

2

5.    As of June 8, 2016, there are one or more defaults in paying Debtor(s) post-petition amounts due with respect to the Note.

6.    As of June 8, 2016, the unpaid principal balance of the Note is $236,657.31.

7.    The following chart sets forth those post petition payments, due pursuant to the terms of the Note, that have been missed by the Debtor(s)' as of June 8, 2016:

| Number of Missed Payments | From | To | Missed Monthly Principal and Interest | Missed Monthly Escrow (if applicable) | Monthly Payment Amount | Total Amounts Missed |
|---|---|---|---|---|---|---|
| 14 | 05/01/2015 | 06/01/2016 | $959.37 | $413.41 | $1,372.78 | $19,218.92 |
| Less post petition partial payments (suspense balance): | | | | | | ($0.00) |
| | | | | | **Total:** | **$19,218.92** |

8.    As of June 8, 2016, the total post-petition arrearage/delinquency is $19,218.92, consisting of (I) the foregoing total of missed post-petition payments in the amount of $19,218.92 plus (ii) the following post-petition fees: $0.00.

| Description | Amount |
|---|---|
| N/A | N/A |

3

9.    Attached hereto as Exhibit "1" is a post petition payment history.

Pursuant to 28 U.S.C. s. 1746, I hereby declare under penalty of perjury under the laws of

the United States of America that the foregoing is true and correct.

Executed on this 23ᴿᴰ day of June , 2016



_____
Signature

_____
Javier Rivera
Name

_____
Contract Management Coordinator
Title

STATE OF Florida    )
COUNTY OF Palm Bch )

The foregoing instrument was acknowledged and sworn before me this 23 day of June ,

2016, by ___Javier Rivera___ as a ___Contract Management Coordinator___ of Ocwen Loan Servicing, LLC,

who is personally known to me or who has produced _____ as identification.

Notary Public – State of Florida
Timeka J. Motlow
_____
Printed Name
My Commission Expires: 9|16|2017

Notary Public State of Florida
Timeka J Motlow
My Commission FF 054534
Expires 09/16/2017

4

| Debtor Name: | Gary T Stevens |
|---|---|
| BK Case Number: | 14-69570 |
| Filing Date: | 10/6/2014 |
| Post First Due: | 11/1/2014 |

| | | | | Completed by: | Imran | |
|---|---|---|---|---|---|---|
| Post-Petition Due | Date Received | Amount Received | Amount Due | Suspense Application | Suspense Balance | Comments |
| 11/1/2014 | 1/15/2015 | $1,387.92 | $1,372.78 | $15.14 | $15.14 | |
| 12/1/2014 | 11/30/2015 | $1,357.64 | $1,372.78 | -$15.14 | $0.00 | |
| 1/1/2015 | 2/16/2016 | $1,372.78 | $1,372.78 | $0.00 | $0.00 | |
| 2/1/2015 | 3/19/2016 | $1,372.78 | $1,372.78 | $0.00 | $0.00 | |
| 3/1/2015 | 4/30/2016 | $1,372.78 | $1,372.78 | $0.00 | $0.00 | |
| 4/1/2015 | 05/31/16 | $1,372.78 | $1,372.78 | $0.00 | $0.00 | |

| Debtor Post Due: 05/01/2015 | | | | | |
|---|---|---|---|---|---|
| Due Date | Total Payment | Principal | Interest | Escrow | NOPC Filed Date |
| 5/1/2015 | $1,372.78 | $574.43 | $384.94 | $413.41 | |
| 6/1/2015 | $1,372.78 | $575.39 | $383.98 | $413.41 | |
| 7/1/2015 | $1,372.78 | $576.34 | $383.03 | $413.41 | |
| 8/1/2015 | $1,372.78 | $577.30 | $382.07 | $413.41 | |
| 9/1/2015 | $1,372.78 | $578.27 | $381.10 | $413.41 | |
| 10/1/2015 | $1,372.78 | $579.23 | $380.14 | $413.41 | |
| 11/1/2015 | $1,372.78 | $580.20 | $379.17 | $413.41 | |
| 12/1/2015 | $1,372.78 | $581.16 | $378.21 | $413.41 | |
| 1/1/2016 | $1,372.78 | $582.13 | $377.24 | $413.41 | |
| 2/1/2016 | $1,372.78 | $583.10 | $376.27 | $413.41 | |
| 3/1/2016 | $1,372.78 | $584.07 | $375.30 | $413.41 | |
| 4/1/2016 | $1,372.78 | $585.05 | $374.32 | $413.41 | |
| 5/1/2016 | $1,372.78 | $586.02 | $373.35 | $413.41 | |
| 6/1/2016 | $1,372.78 | $587.00 | $372.37 | $413.41 | |
| Total | $19,218.92 | $8,129.69 | $5,301.49 | $5,787.74 | |

EXHIBIT A

Deed Book 14395 Pg 843

Georgia Intangible Tax Paid $706.50



Jay C. Stephenson
Clerk of Superior Court Cobb Cty. Ga.

RETURN TO:
NEEL & ROBINSON, LLC
5555 GLENRIDGE CONNECTOR
SUITE 400
ATLANTA, GA 30342

After Recording Return To:
**NEEL & ROBINSON, ATTORNEY AT LAW, LLC**
**2018 POWERS FERRY ROAD, STE 550**
**ATLANTA                    , GA          30339**

**Notice:This mortgage is subject to special rules under the Georgia Fair Lending Act.**

**Purchasers and assignees of this mortgage may be liable for all claims and defenses by the borrower with respect to the mortgage.**

Notice: This is a mortgage subject to special rules under the federal Truth in Lending Act. Purchasers or assignees of this mortgage could be liable for all claims and defenses with respect to the mortgage that the borrower could assert against the creditor. ———————————————— [Space Above This Line For Recording Data] ————————————————

# SECURITY DEED

MIN:

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)**  **"Security Instrument"** means this document, which is dated **August 31, 2006**                    , together with all Riders to this document.

**(B)**  **"Borrower"** is **GARY T STEVENS   AND  MICHELLE  STEVENS**

Borrower is the grantor under this Security Instrument.

**(C)**  **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the grantee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D)**  **"Lender"** is **Taylor, Bean & Whitaker Mortgage Corp.**                    .
Lender is a **a Florida Corporation**                    organized and existing under the laws of **FL**                    . Lender's address is
**1417 North Magnolia Ave, Ocala, FL  34475**

**(E)**  **"Note"** means the promissory note signed by Borrower and dated **August 31, 2006**                    . The Note states that Borrower owes Lender **Two Hundred Thirty Five Thousand Two Hundred and no/100**
Dollars (U.S. **$235,200.00**                    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **September 01, 2036**                    .

**(F)**  **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

GEORGIA—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

(Page 1 of 12 pages)

Form 3011 1/01
GREATLAND ■

**(G)** **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☒ Other(s) [specify] |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | WAIVER OF BORROWERS RIGHTS CLOSING ATTY AFFIDAVIT |

**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** **"Escrow Items"** means those items that are described in Section 3.

**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the **County**                          of                          **Cobb**                          :

[Type of Recording Jurisdiction]                          [Name of Recording Jurisdiction]

**See Attached Exhibit A.**

which currently has the address of                          **1476 FALLSBROOK COURT**

[Street]

**Acworth**                          , Georgia                          **30101**                          ("Property Address"):

[City]                          [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.    **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or

GEORGIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

*(Page 3 of 12 pages)*

partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest

GEORGIA—Single Family—Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**

*(Page 4 of 12 pages)*

or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.   Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.   Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration

**GEORGIA**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

*(Page 5 of 12 pages)*

period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

GEORGIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

*(Page 6 of 12 pages)*

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be

GEORGIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

*(Page 7 of 12 pages)*

applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not

GEORGIA—Single Family—Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**

*(Page 8 of 12 pages)*

limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property

and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20.   Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21.   Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

EXHIBIT A

Case 14-69570-lrc    Doc 60    Filed 06/28/16    Entered 06/28/16 15:56:49    Desc Main
Document    Page 25 of 43    Deed Book 14385 Pg 853

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

25. **Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. **Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in pages 1 through 12 of this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

_____                    _____ (Seal)
Unofficial Witness                                                                                        GARY T STEVENS                              -Borrower

_____                    _____ (Seal)
                                                                                                          MICHELLE STEVENS                         -Borrower

Notary Public, _____ County

My commission expires:                                                          _____ (Seal)
                                                                                                                                                       -Borrower

                                                                                                          _____ (Seal)
                                                                                                                                                       -Borrower

                                                                                                          _____ (Seal)
                                                                                                                                                       -Borrower

                                                                                                          _____ (Seal)
                                                                                                                                                       -Borrower

GEORGIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

*(Page 12 of 12 pages)*

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **31st** day of **August 2006** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **Taylor, Bean & Whitaker Mortgage Corp.**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**1476 FALLSBROOK COURT**
**Acworth, GA 30101**

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

COVENANTS AND RESTRICTIONS

(the "Declaration"). The Property is a part of a planned unit development known as

**BROOKSTONE**

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

MULTISTATE PUD RIDER—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3150 1/01

*(Page 1 of 2 pages)*    GREAT LAND ■

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in pages 1 and 2 of this PUD Rider.

_____ (Seal)       _____ (Seal)
GARY T STEVENS                    -Borrower     MICHELLE STEVENS                  -Borrower

_____ (Seal)       _____ (Seal)
                                  -Borrower                                       -Borrower

_____ (Seal)       _____ (Seal)
                                  -Borrower                                       -Borrower

**MULTISTATE PUD RIDER**—Single Family—Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**        Form 3150 1/01

EXHIBIT A

Deed Book **14385** Pg   **857**

EXHIBIT "A"
LEGAL DESCRIPTION

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND
LOTS 231 AND 232, 20TH DISTRICT, 2ND SECTION, COBB COUNTY,
GEORGIA, BEING LOT 13, BLOCK J, BROOKSTONE, P.D. I, UNIT III,
PHASE I, AS PER PLAT RECORDED IN PLAT BOOK 124, PAGE 63, COBB
COUNTY RECORDS, SAID PLAT BEING INCORPORATED HEREIN BY
REFERENCE SUBJECT TO ANY RIGHT OF WAY DEEDS OR OTHER
EASEMENTS OF RECORD.

# EXHIBIT A

GEORGIA- **Other**

GRANTOR: **GARY T STEVENS**

LENDER: **Taylor, Bean & Whitaker Mortgage Corp.**

DATE OF SECURITY DEED: **8/31/2006**

LOAN NUMBER: ███████

### WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY:(1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISION OF THE PARAGRAPH 22 HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED IN PARAGRAPH 22 HERREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND PARAGRAPH 22 OF THIS DEED AND ANY ALL QUESTIONS REGARDING LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLYBY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

O.C.G.A. SECTION 7-1-1014 (3) REQUIRES THAT WE INFORM YOU THAT IF YOU FAIL TO MEET ANY CONDITION OR TERM OF THE DOCUMENTS THAT YOU SIGN IN CONNECTION WITH OBTAINING A MORTGAGE LOAN YOU MAY LOSE THE PROPERTY THAT SERVES AS COLLATERAL FOR THE MORTGAGE LOAN THROUGH FORCLOSURE.

READ AND AGREED BY GRANTOR:

Signed, Sealed and delivered
in the presence of:

_____ (Seal)
Grantor **GARY T STEVENS**

_____ (Seal)
Grantor  MICHELLE STEVENS

_____ (Seal)
Grantor

_____ (Seal)
Grantor

_____ (Seal)
Grantor

_____ (Seal)
Grantor

NOTARY PUBLIC

EXHIBIT A  Case 14-69570-lrc   Doc 60   Filed 06/28/16   Entered 06/28/16 15:56:48   Desc Main Document   Page 31 of 43

Deed Book 14395 Pg 859
Jay C. Stephenson
Clerk of Superior Court Cobb Cty. Ga.

**CLOSING ATTORNEY'S AFFIDAVIT**

RE: Borrower(s): **GARY T STEVENS**

Lender: **Taylor, Bean & Whitaker Mortgage Corp.**

Date: **8/31/2006**

Before the undersigned attesting officer personally appeared the undersigned closing attorney or agent, who having been the first duly sworn according to law states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Acknowledgement and Waiver of Borrower's Rights" by the Borrower(s), a representative of the firm reviewed with and explained to the Borrower(s) the term and provisions of the Deed to Secure Debt and particularly the provisions thereof, thereof authorizing the Lender to sell the secured property by a non-judicial foreclosure under a power of sale, together with the "Acknowledgement and Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosures in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with an explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Acknowledgement and Waiver of Borrower's Rights.

Based on said review and explanation to the Borrower(s), it is the opinion of the firm that the Borrower(s) knowingly, intentionally and willingly executed the waiver of the Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

_____
Closing Attorney

Sworn and subscribed before me, this

_____
Notary Public

# INITIAL INTEREST<sup>SM</sup> NOTE

**August 31, 2006**                         **Acworth**                         **Georgia**
[Date]                              [City]                              [State]
**1476 FALLSBROOK COURT**
**Acworth, GA  30101**

[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $**235,200.00**        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Taylor, Bean & Whitaker Mortgage Corp.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of        **7.5000%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

### (A)  Time and Place of Payments

I will make a payment every month on the first day of the month beginning on        **October 01, 2006**       . Before the first fully amortizing principal and interest payment due date, my monthly payments will be only for the interest due on the unpaid principal of this Note. The due date of my first payment including fully amortizing principal and interest is the first day of        **October 01, 2016**       . I will make payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on **September 01, 2036**        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **Taylor, Bean & Whitaker Mortgage Corp., 1417 North Magnolia Ave, Ocala, FL  34475**

                                                                                    or at a different place if required by the Note Holder.

### (B)  Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $**1,470.00**           until the due date of the first fully amortizing principal and interest payment. Beginning with the first fully amortizing principal and interest payment, my payment will be in the amount of U.S. $**1,894.76**          .

The Note Holder will notify me prior to the date of any change in the amount of my monthly payment in accordance with Section 7 of this Note. The Note Holder will provide the title and telephone number of a person who will answer any questions I may have regarding the notice.

**MULTISTATE INITIAL INTEREST FIXED RATE NOTE—Single Family—Freddie Mac UNIFORM INSTRUMENT          Form 5206 5/04**

*(Page 1 of 4 pages)*

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to the changes. If I make a partial Prepayment during the period ending with the due date of my last interest only monthly payment, the partial Prepayment will reduce the amount of my monthly payment. If I make a partial Prepayment after the due date of my last interest only payment, the amount of my monthly payment will not change unless the Note Holder agrees in writing to that change.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.0000**% of the overdue payment of interest during the period when my payment is interest only, and of principal and interest after that. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

EXHIBIT B

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

# EXHIBIT B

Borrower has executed and acknowledges receipt of pages 1 through 4 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
GARY T STEVENS                        -Borrower                                              -Borrower

_____ (Seal)          _____ (Seal)
                                          -Borrower                                              -Borrower

_____ (Seal)          _____ (Seal)
                                          -Borrower                                              -Borrower

*[Sign Original Only]*

Without recourse, pay to the order of

By: Taylor, Bean & Whitaker
    Mortgage Corp.

Erla Carter-Shaw, E.V.P.



## RELEASE AUTHORIZATION
### (Loan Modification)

**American Home Mortgage Servicing, Inc.:**

Loan No. ████████████

The undersigned (whether one or more, "Borrower") has requested a loan modification of the referenced Loan. In this regard, Borrower, by signing below, authorizes American Home Mortgage Servicing, Inc., or its designated representative ("AHMSI") to:

- Order a credit report on Borrower from any Credit Reporting Agency of AHMSI's choice.
- Verify and re-verify, where necessary, Borrower's employment and income with any employer of Borrower.
- Verify and re-verify, where necessary, any Bank Account which Borrower lists with AHMSI.
- Obtain any information from any source AHMSI reasonably thinks is necessary for review of the requested loan modification.

Borrower also authorizes AHMSI to forward any and all credit information obtained by AHMSI to any Institutional Investor which may be required for review of the requested loan modification.

_____  8/20/10        _____
Borrower          Date                   Borrower          Date

_____                 _____
Borrower          Date                   Borrower          Date

_____                 _____
Borrower          Date                   Borrower          Date

# Loan Mod Calc Sheet

**AHMSI LOAN MODIFICATION CALCULATION SHEET**

Loan Details

## Loan Info

| Loan Number : | Net Due : | Origination Date : | Current Value : | Current Date : |
|---|---|---|---|---|
| | $6,623.94 | 08 31 2006 | $181,000.00 | 11 03 2010 |
| | | | 10 11 2010 | |
| Borrower Name : | No Of Payments Due : | First Payment Date : | LPI : | Property Address & State : |
| GARY STEVENS | 5 | 10 01 2006 | 06 01 2010 | 1476 FALLSBROOK CT |
| | | | | ACWORTH, GA 32101 |
| Co-Borrower Name : | Investor Approval Required : | Original PB : | MI Company : | No. of Autos : |
| | Yes | $ 235,200.00 | | 2 |
| Modification Allowed : | Investor : | Original Term : | MI Claim No : | No. of People : |
| Yes | P76 | 360 | N A | 5 |
| | TBW 2006-5 | | | |
| Capitalization Allowed : | Inv Loan No. : | Interest Rate | Delegated Authority : | Workout Completion Date : |
| Yes | 0001332456 | 7.500% | No | 11 30 10 |
| Default NPV : | NPV Data as of : | Loan Product Type : | Multi Loan : | Max Code : |
| | 11 02 2010 | ARM | No | N - Fulfilment Workout |
| | | Investor Restriction : | HAMP To Traditional | |

Loan Notification

GG - General Servicing Loan

## Financials

| Monthly Income | Borrower | Co-borrower | Monthly Expenses | | Living Expenses : | |
|---|---|---|---|---|---|---|
| Gross Monthly Wage | $ 8,685.47 | $ 0.00 | Obligation Expenses | | FOOD | $ 600.00 |
| | | | 1ST 2ND MORTGAGE | $ 1,470.00 | UTILITIES G W E | $ 440.00 |
| Net Monthly Wage | $ 6,973.44 | $ 0.00 | OTHER MORTGAGES | $ 642.00 | TRANSPORTATION | $ 200.00 |
| Unemployment | $ 0.00 | $ 0.00 | AUTO INSURANCE | $ 99.00 | CHILD CARE | $ 0.00 |
| Soc Sec Benefits | $ 0.00 | $ 0.00 | HOA | $ 49.25 | HEALTH INSURANCE | $ 550.00 |
| Child Support Alimony | $ 0.00 | $ 0.00 | MEDICAL BILLS | $ 200.00 | LIFE INSURANCE | $ 129.00 |
| Rents Received | $ 0.00 | $ 0.00 | | | CELL PHONE | $ 80.00 |
| Miscellaneous | $ 0.00 | $ 0.00 | | | CABLE INTERNET | $ 50.00 |
| Others | $ 0.00 | $ 0.00 | | | DENTALS | $ 30.00 |
| Additional Household Wage | $ 0.00 | $ 0.00 | | | | |
| Additional Household Other Income | $ 0.00 | | | | | |
| Total | $ 6,973.44 | $ 0.00 | | | | |
| Grand Total | | $ 6,973.44 | Grand Total | | $ 4,511.25 | |
| Total Gross Amount | | $ 8,685.47 | | | | |
| Total Monthly Surplus | | $ 2,462.19 | | | | |

## Assets and Liabilities

| Assets | | Liabilities | | Contributions | |
|---|---|---|---|---|---|
| Home | $ 161,000.00 | UPB | $ 235,200.00 | Borrower Contribution | $ 122.03 |
| Other | $ 0.00 | Delinquent Interest Credit | $ 0.00 | Contribution Fund | $ 122.03 |
| | | Principal Reduction | $ 0.00 | Total Contribution | $ 122.03 |
| | | Capped Escrow | $ 0.00 | Less Fees and Costs | $ 122.03 |
| | | Capped Fees | $ 2,069.54 | Contribution Balance | $ 0.00 |
| | | Capped Interest | $ 8,820.00 | Amt Towards 1st Due Pmt | |
| | | Balloon Deferment | $ 0.00 | | |
| TOTAL ASSETS | $ 161,000.00 | TOTAL LIABILITIES | $ 246,089.54 | | |
| Net Worth | -$ 85,089.54 | | | | |

## Modification Information

| ORDER | | TOTAL DUE | BORR PAID | CAPITALIZE | DEFER | WAIVE | DEL |
|---|---|---|---|---|---|---|---|
| 1 | Property Inspections | $ 66.00 | $ 66.00 | $ 0.00 | $ 0.00 | $ 0.00 | |
| 3 | Property Valuations | $ 79.00 | $ 55.43 | $ 23.57 | $ 0.00 | $ 0.00 | |
| 3 | Accrued Late Charges | $ 1,395.97 | $ 0.00 | $ 1,395.97 | $ 0.00 | $ 0.00 | |
| 4 | Modification Fee Document Preparation Fee | $ 650.00 | $ 0.00 | $ 650.00 | $ 0.00 | $ 0.00 | |
| 5 | Title Report Policy | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | |
| 6 | Delinquent Taxes Unpaid Insurance | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | |
| 7 | Delinquent Interest | $ 8,820.00 | $ 0.00 | $ 8,820.00 | $ 0.00 | $ 0.00 | |
| TOTAL | | $ 11,011.57 | $ 122.03 | $ 10,889.54 | $ 0.00 | $ 0.00 | |
| Fees | | $ 2,191.57 | $ 122.03 | $ 2,069.54 | $ 0.00 | $ 0.00 | |
| Escrow | | $ 0.00 | $ 0.00 | $ 0.00 | | | |
| Interest | | $ 8,820.00 | $ 0.00 | $ 8,820.00 | | | |
| --Select One-- | | 0.00 | | | | | |

## Modification Results

| Modified Product | | | Product Other Type | | | Annuity | | |
|---|---|---|---|---|---|---|---|---|
| Type | Current | Modified | Type | Current | Modified | Type | Current | Modified |
| Maturity Date | 09 01 2036 | 09 01 2036 | ARM Reset Period | | | Pre Mod Surplus | 2,462.19 | 2,639.86 |
| Interest Rate | 7.500 % | 4.250 % | Current Ceiling | | 000 % | Recommended Surplus | NA | $ 868.55 |
| Remaining Term | 315 | 308 | Current Floor | | 000 % | New Equity Position | NA | 65,089.54 |
| PB | 235,200.00 | 246,089.54 | New Ceiling New Floor | | 000 % 000 % | Amount over Original PB | | 10,889.54 |
| P & I | $ 1,470.00 | $ 1,308.64 | Balloon Extension Term | | | MDTI | 20.632 % | 18.586 % |
| Insurance | $ 94.67 | $ 108.00 | Balloon Deferment | $ 0.00 | | FDTI | 51.940 % | 49.994 % |
| All Amount | $ 0.00 | $ 0.00 | Amortized UPB | | $ 0.00 | Payment Difference | NA | 10.977 % |
| Taxes | $ 227.91 | $ 197.65 | Balloon Payment | $ 0.00 | | Cap Percentage | NA | 4.630 % |
| Total Escrow | $ 321.98 | $ 305.65 | Total Balloon Payment | | $ 0.00 | NPV Floor Payment | NA | $ 508.00 |
| PITI | $ 1,791.98 | $ 1,614.29 | | | | NPV Mod Variance | NA | 1,629.90 |

| Modification Type | | Type Change FROM: | Type Change TO: | ARM Freeze Period : | FHLMC 30 Yr Rate : | Rate Adjt. : | |
|---|---|---|---|---|---|---|---|
| D - ARM to Fixed | | ARM | Fixed | | 4.250 % | | 0.00 |

Completed by :
Bara Decker

## Approvals

| | | | |
|---|---|---|---|
| | Level I | | Level II |
| | Level III | | Level IV |

Reason For Modification

Hello I am a popup table

Last Refreshed on
11 03 10 4 34 PM (CST)
Last Saved on
11 03 10 3 35 PM (CST)

Version 5.7.2 (10-26-10) Good Afternoon -November 3 2010

THIS MODIFICATION AGREEMENT CONVERTS YOUR LOAN INTO A BALLOON LOAN, WHICH MEANS THAT EVEN IF YOU MAKE ALL YOUR SCHEDULED PAYMENTS WHEN DUE, THE LOAN WILL NOT BE PAID IN FULL AT THE END OF ITS TERM (WHICH MAY CHANGE AS IS INDICATED BELOW).   AS A RESULT, ON THE MATURITY DATE, YOU WILL BE REQUIRED TO REPAY, IN A SINGLE PAYMENT, THE ENTIRE REMAINING PRINCIPAL BALANCE (THE BALLOON PAYMENT INDICATED IN THE SCHEDULE BELOW) PLUS ALL ACCRUED AND UNPAID INTEREST AND ALL OTHER AMOUNTS OWING ON THAT DATE (INCLUDING BUT NOT LIMITED TO ALL ADVANCES MADE BY LOAN SERVICER UNDER THE TERMS OF THE SECURITY INSTRUMENT).

*CAUTION TO BORROWER: NO OBLIGATION TO REFINANCE* - LENDER OR SERVICER HAS NO OBLIGATION TO REFINANCE THIS LOAN OR MAKE YOU A NEW LOAN ON THE MATURITY DATE.  IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE, YOU MAY HAVE TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY TO MAKE THE BALLOON PAYMENT.  ASSUMING ANOTHER LENDER MAKES YOU A NEW LOAN ON THE MATURITY DATE, YOU WILL PROBABLY BE CHARGED INTEREST AT THE MARKET RATE PREVAILING AT THAT TIME.  SUCH INTEREST RATE MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN.  YOU MAY AGAIN HAVE TO PAY COMMISSIONS, FEES AND EXPENSES FOR THE ARRANGING OF THE NEW LOAN.  IN ADDITION, IF YOU ARE UNABLE TO MAKE THE MONTHLY PAYMENTS OR THE BALLOON PAYMENT, YOU MAY LOSE THE PROPERTY AND ALL OF YOUR EQUITY THROUGH FORECLOSURE.  KEEP THIS IN MIND IN DECIDING WHETHER TO AGREE TO THE TERMS OF THIS LOAN MODIFICATION AGREEMENT.

# HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

Borrower ("I"): [1]GARY T STEVENS
Lender or Servicer ("Lender"): American Home Mortgage Servicing, Inc.
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 8/31/2006
Loan Number: █████████
Property Address ("Property"): 1476  FALLSBROOK CT,ACWORTH GA 30101

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement.  This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.  **My Representations.**  I certify, represent to Lender, and agree:

    A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B. I live in the Property as my principal residence, and the Property has not been condemned;

    C. There has been no change in the ownership of the Property since I signed the Loan Documents;

    D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));

    E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

    G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2.  **Acknowledgements and Preconditions to Modification.**   I understand and acknowledge that:

    A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate.  In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    B. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred.  I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

3.    **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 3/1/2012 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on 3/1/2012.

A.  The new Maturity Date will be: 9/1/2036.

B.  The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amount") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $252,099.66 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C.  Interest at the rate of 2% will begin to accrue on the New Principal Balance as of 2/1/2012, and the first new monthly payment on the New Principal Balance will be due on 3/1/2012. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2% | 2/1/2012 | $959.37 | $365.67 | $1,325.04 | 3/1/2012 | 60 |
| 6 | 3% | 2/1/2017 | $1,068.36 | May adjust periodically | May adjust periodically | 3/1/2017 | 12 |
| 7-25 | 4% | 2/1/2018 | $1,179.86 | May adjust periodically | May adjust periodically | 3/1/2018 | 222 |
| 25 | N/A% | N/A | $56,432.43 | May adjust periodically | $56,432.43 | 9/1/2036 | 1 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4.  **Additional Agreements**.  I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan, or Workout Plan that I previously entered into with Lender.

C.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.  **Funds for Escrow Items**.  I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents;  (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items."  I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items.  Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within

such time period as Lender may require. My obligation to make such payments and to provide receipts shall, for all purposes, be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount, and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items, or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured), or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, any provision in the Note, as amended, for the assessment of a penalty for full or partial prepayment of the Note must be waived with respect to any borrower "pay for performance" principal reduction payments that are applied to the Loan.

J.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement.  I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error.  If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L.  Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS.  In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees, or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

N.  I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial, and deliver to the Lender any documentation the Lender deems necessary.  If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note.  All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents."  I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

In Witness Whereof, the Lender and I have executed this Agreement.

_____
American Home Mortgage Servicing, Inc.

By: _____

GARY T STEVENS

Date  2/25/13

_____
Date

_____[Space Below This Line For Acknowledgement]_____

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                   (page 5 of 5 pages)

EXHIBIT C



BK: **15012** PG: **4707**
Filed and Recorded Dec-18-2012 12:52:13PM
DOC#: **D2012-129235**

*[signature]*

JAY C. STEPHENSON
CLERK OF SUPERIOR COURT Cobb Cty. GA.

**Return to:**
Aldridge Connors LLP
15 Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305

Reference No. ████████
Borrower: Gary T. Stevens and Michelle Stevens
MIN: ████████████
MERS Phone Number: ████████████

NOTE TO CLERK:  Please cross-reference to Deed Book 14385, Page 843, Cobb County, Georgia Records.

## ASSIGNMENT

STATE OF __**Florida**__

COUNTY OF __**Duval**__

For value received, Mortgage Electronic Registration Systems, Inc. as nominee for Taylor, Bean & Whitaker Mortgage Corp. (□Assignor□) has this day transferred, sold, assigned, conveyed and set over to U.S. Bank National Association, as Trustee for TBW Mortgage-Backed Trust Series 2006-5, Mortgage Pass-Through Certificates, Series 2006-5, its successors, representatives and assigns, whose address is 1525 S. Belt Line Road Coppell, TX 75019, as Assignee, all its right, title and interest in and to a certain Security Deed (or Deed to Secure Debt) executed by Gary T. Stevens and Michelle Stevens to Mortgage Electronic Registration Systems, Inc. as nominee for Taylor, Bean & Whitaker Mortgage Corp., dated 8/31/2006, recorded in Deed Book 14385, Page 843, Cobb County, Georgia Records.

Property Address: 1476 Fallsbrook Court, Acworth, Georgia 30101

The Assignor herein specifically transfers, sells, conveys and assigns to the above Assignee, its successors, representatives and assigns, the aforesaid Security Deed, with all interest secured thereby, all liens and any rights due or to become due thereon, along with all rights in the property described therein, together with all the powers, options, privileges and immunities therein contained.

IN WITNESS WHEREOF, the undersigned has hereunto set its hands and seal this __*7th*__ day of
*Dec* __, 2012__.

Signed, sealed and delivered
in the presence of:

*Karen S Boyd*
Unofficial Witness

*[signature]*
Notary Public Brenda L Frazier
My Commission Expires: *4.30.2013*

NOTARY PUBLIC-STATE OF FLORIDA
Brenda L. Frazier
Commission #DD885641
Expires:  APR. 30, 2013
BONDED THRU ATLANTIC BONDING CO., INC.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR TAYLOR, BEAN & WHITAKER MORTGAGE CORP.    or Assigns

By: *[signature]* Its Successors
Daniel Staten
Title:  **Assistant Secretary**

By: *[signature]* 12-7-12
Title:  **Assistant Secretary**   **April King**
(Corporate Seal)

Produced Florida Drivers License as identification